**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4470**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

FELIX ADRIANO CHUJOY, a/k/a Felix Chujoy Alvarado,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Michael F. Urbanski, Chief District Judge.  (5:15-cr-00029-MFU-1)

Submitted:  January 8, 2019                         Decided:  April 30, 2019

Before RICHARDSON and QUATTLEBAUM, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Aaron L. Cook, COOK ATTORNEYS, Harrisonburg, Virginia, for Appellant.  Thomas Cullen, United States Attorney, Roanoke, Virginia, Kate Rumsey, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Felix Chujoy appeals the district court's denial of his motion for judgment of acquittal of his conviction for witness tampering of Mike Kwiatkowski under 18 U.S.C. § 1512(b)(1), conspiracy to engage in witness tampering under 18 U.S.C. § 1512(k), and obstruction of justice under 18 U.S.C. § 1503. Chujoy argues that the evidence is insufficient to support the jury's finding that he knowingly used "corrupt persuasion" against a witness. Because we conclude that a reasonable jury could have found that Chujoy corruptly persuaded a witness to change his testimony, we affirm.

I.

The events giving rise to the charges at issue here stem from a separate prosecution. In that case, Chujoy and his mother, Maria Rosalba Alvarado McTague, were indicted on several counts of human trafficking and for immigration violations related to the operation of McTague's restaurant, Inca's Secret. *See United States v. McTague,* No. 5:14-CR-00055, 2015 WL 13158499, at \*1 (W.D. Va. Dec. 10, 2015). Chujoy was arrested and released on bond on the condition that he avoid all contact with potential witnesses in the *McTague* case. As a result of suspected interactions with such witnesses, however, Chujoy was charged with witness tampering in a second indictment. He was subsequently rearrested.

While Chujoy was detained upon rearrest, the Department of Homeland Security interviewed Kwiatkowski, a close friend of Chujoy's, in connection with its investigation into the *McTague* case. Though not intimately familiar with the operation of Inca's

2

Secret, Kwiatkowski had on at least one occasion helped Chujoy transport restaurant employees. While transporting the employees, Chujoy told Kwiatkowski that they were "illegal." J.A. 365. During an interview with agents in June 2015, Kwiatkowski suggested that Chujoy could not be trusted because of his tendency to be dishonest. That statement was later disclosed to Chujoy. After learning of Kwiatkowski's statement, Chujoy took several actions that would later give rise to a third indictment--the one at issue in this appeal--involving witness tampering of Kwiatkowski.

First, Chujoy made a series of calls about Kwiatkowski to Donald Smith--a close friend of Chujoy's who, at the time, was Deputy Sheriff in Augusta County, Virginia.[1] In these calls, Chujoy expressed concern that Kwiatkowski had mistakenly taken statements Chujoy had made in jest as true and had shared them with law enforcement, and he urged Smith to speak with Kwiatkowski. Aware that his own calls were being recorded, Chujoy made these calls to Smith using other inmates' PINs even though he had sufficient funds in his commissary balance to pay for them. Ten of the eleven calls Chujoy made using other inmates' PINs were to Smith. Smith did not contact Kwiatkowski.

Second, Chujoy also reached out to Caroline Edlind, a close family friend, to voice concerns similar to those expressed to Smith. A day after Chujoy's attorney received Kwiatkowski's witness statement, Chujoy wrote a letter to Edlind explaining how he was "shocked" by what Kwiatkowski said. S.J.A. 828. He told Edlind that Kwiatkowski "really is as dumb as a door knob, as he obviously could not understand/differentiate

_____

[1] Smith was at no point involved with any case or investigation against Chujoy.

3

[between] when [Chujoy] was joking and when [he] was being serious." *Id.* Chujoy urged Edlind to talk with Kwiatkowski so that the latter would understand that "much of the information he gave out is *incorrect* and could lead to [Chujoy] getting into a *huge* problem." *Id.* Shortly after receiving this letter, Edlind arranged to meet with Kwiatkowski over dinner to discuss Chujoy's concerns. During the dinner, Edlind discussed Chujoy's letter and counseled Kwiatkowski against making future statements to law enforcement. Following Chujoy's instructions, Edlind told Kwiatkowski that Chujoy tended to exaggerate for humor. Unbeknownst to Edlind, Kwiatkowski attended the dinner wearing a recording device.

Chujoy was rereleased shortly after Edlind's dinner with Kwiatkowski, again with orders to have no contact with potential witnesses. The government shifted the focus of its witness tampering investigation to potential tampering by Chujoy and Edlind of Kwiatkowski. Based on the evidence of Chujoy's conduct while in jail, including the calls and letters discussed above, a new grand jury issued the third indictment against Chujoy and Edlind for the charges at issue in this appeal.

Chujoy and Edlind were both tried before a jury for witness tampering involving Kwiatkowski, conspiracy to commit witness tampering, and obstruction of justice in December 2015. At trial, after the government closed its case, Chujoy moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court reserved decision on the motion, and the trial continued. At the close of all evidence, Chujoy renewed the Rule 29 motion, but the court again reserved decision and

4

submitted the case to the jury. On December 22, 2015, a jury found Chujoy and Edlind guilty of all charges.

In response to Chujoy's Rule 29 motion, the court concluded that the government had presented sufficient evidence for a reasonable juror to find Chujoy guilty of each of these three counts. The court found that the evidence was sufficient for a reasonable juror to infer that Chujoy intended and had instructed Edlind to corruptly persuade Kwiatkowski to deny knowledge of some of Chujoy's past behavior during his testimony at trial. This appeal followed.[2]

## II.

We review the denial of a motion for a judgment of acquittal de novo. *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998). Where a Rule 29 motion is based on insufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). In such challenges, the defendant "bears 'a heavy burden,'" *United States v. Beidler,* 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted), and reversal for insufficiency must "be confined to cases where the prosecution's failure is clear," *United States v. Edlind*, 887 F.3d 166, 172 (4th Cir. 2018) (citation omitted).

---

[2] Edlind separately appealed her convictions, challenging the sufficiency of the evidence. We affirmed the district court's denial of her Rule 29 motion. *See United States v. Edlind,* 887 F.3d 166, 168 (4th Cir. 2018).

5

III.

Chujoy argues that the district court erred in finding that the government presented sufficient evidence to prove that he was guilty of witness tampering with respect to Kwiatkowski.[3] Specifically, Chujoy contends that the evidence was insufficient to prove that he knowingly corruptly persuaded Kwiatkowski. Because we conclude that a jury could find that the evidence presented was sufficient to find that Chujoy knowingly attempted to corruptly persuade Kwiatkowski, we disagree.

Witness tampering occurs when a defendant (1) knowingly (2) uses or attempts to use intimidation, threats, corrupt persuasion, or misleading conduct toward another person (3) with the intent to influence, delay, or prevent the testimony of a person in an official proceeding. 18 U.S.C. § 1512(b). It is not alleged that the witness tampering of Kwiatkowski involved intimidation, threats, or misleading conduct. Accordingly, the sole issue on appeal is whether the evidence was sufficient to support a finding that Chujoy knowingly used corrupt persuasion toward Kwiatkowski.

To convict a defendant for witness tampering through corrupt persuasion, the government must prove not only that the defendant used persuasion toward a witness, but also that the persuasion was corrupt. *See Edlind,* 887 F.3d 166, 173 (4th Cir. 2018) ("[T]he word 'corruptly' is what serves to separate the criminal and innocent acts of

---

[3] Although it is unclear which charges Chujoy appeals, Chujoy's statement of issues, which is limited to the issue of corrupt persuasion, appears to address the counts of witness tampering and conspiracy to engage in witness tampering. Chujoy does not appear to challenge the obstruction of justice conviction, so we deem this argument to be waived.

6

influence.") (internal citation and quotation marks omitted).  Persuasion is corrupt when the defendant is "conscious of wrongdoing" and acts with "wrongful, immoral, depraved, or evil" intent.  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705–06 (2005). Although corrupt persuasion does not require "acts, threats, emotional appeals, or persistent pleading," it does require a defendant's actions to be done "voluntarily and intentionally to bring about false or misleading testimony . . . with the hope or expectation of some benefit to the defendant."  *Edlind*, 887 F.3d at 173–74 (quoting *United States v. Sparks,* 791 F.3d 1188, 1191 (10th Cir. 2015)).  Consequently, a finding of corrupt persuasion is appropriate if a reasonable jury could find that the evidence supports the conclusion that Chujoy used persuasion toward Kwiatkowski and knew that his actions were corrupt.

Our conclusion that a reasonable jury could have found that Chujoy knowingly corruptly persuaded Kwiatkowski is supported by direct evidence that Chujoy attempted to persuade Kwiatkowski to alter his testimony at trial and by circumstantial evidence demonstrating that Chujoy was conscious of his wrongdoing.  We discuss these factors in turn.

First, there was sufficient evidence that Chujoy attempted to persuade Kwiatkowski to alter his testimony through Edlind.  Corrupt persuasion may be found where a defendant attempts to plant a false fact into the mind of a witness as if it were true.  *See Edlind*, 887 F.3d at 174–75.

Here, a jury could reasonably infer that Chujoy attempted to plant false facts into Kwiatkowski's mind as if they were true when he sent a letter to Edlind upon learning

7

that Kwiatkowski was a potential witness. Chujoy asked Edlind to urge Kwiatkowski to revise his witness statement and to do so "ASAP, as clarifying all this is pretty crucial." S.J.A. 829. Chujoy asked Edlind to "make sure to meet with [Kwiatkowski] so that [Kwiatkowski] understands that much of the information he gave out is *incorrect* and could lead into [Chujoy] getting into a *huge* problem." S.J.A. 828. The letter also stated that Kwiatkowski "should probably also clarify that we didn't really start hanging out, until half way through 2014, as that would probably explain . . . why he didn't really know much about me, or why he couldn't tell when I was joking." S.J.A. 829. Edlind acted upon Chujoy's requests by arranging a dinner with Kwiatkowski during which she addressed Chujoy's concerns and sought to "clarify" things, pursuant to Chujoy's instructions. S.J.A. 829. She mentioned to Kwiatkowski that Chujoy had asked her to contact him and to "[t]ell him not to say anything, don't write anymore, do nothing." J.A. 536. She also mentioned Chujoy's tendency to be dishonest in jest, reminding Kwiatkowski that dishonesty was simply Chujoy's sense of humor.

Although Chujoy did not personally persuade Kwiatkowski, Chujoy certainly urged Edlind to attempt to do so. Where, as here, a defendant attempts to remind a witness of a fact of which they had no previous knowledge, it is an attempt to plant false facts regardless of literal truth. *See United States v. LaShay,* 417 F.3d 715, 719 (7th Cir. 2005) (finding corrupt persuasion where a defendant urged a witness to "remember" something that the defendant may have seen, but the witness had not). Through his letter, Chujoy successfully urged Edlind to attempt to persuade Kwiatkowski to alter his witness statement, on his behalf.

8

Second, circumstantial evidence demonstrates that Chujoy was conscious of his wrongdoing. *See Edlind,* 887 F.3d 166 at 174 (finding circumstantial evidence of consciousness of wrongdoing sufficient to support a finding of corrupt persuasion). Chujoy used the PINs of other inmates to make phone calls in which he urged Smith to contact Kwiatkowksi to "clarify" his statements to federal agents. S.J.A. 851. At the time he reached out to Smith, Chujoy had already been ordered not to contact witnesses in the *McTague* case and was in fact indicted and detained for violating that order. Moreover, Chujoy had just learned that Kwiatkowski was officially a witness in that case and therefore knew he should not be contacted. Chujoy nonetheless called Smith and, critically, used other inmates' PINs to do so despite having sufficient funds in his own commissary account to make the calls using his PIN. By using alternate PINs, Chujoy ensured that the outgoing calls were not linked to his PIN account and, accordingly, that these calls did not appear on his record. Such seemingly surreptitious conduct could reasonably lead a jury to find that Chujoy was attempting to avoid close surveillance of his communication and was conscious that his behavior constituted wrongdoing. *See Edlind*, 887 F.3d 166 at 174 (concluding that "surreptitious acts"--including the defendant's refusal to discuss important information over the phone because she believed that the call was being monitored--constituted evidence of corrupt persuasion).

Chujoy argues that the evidence merely shows that he sought to correct incomplete or inaccurate statements. The evidence, however, taken as a whole and construed in the light most favorable to the government, is sufficient to find that Chujoy attempted to convince Kwiatkowski to change his testimony by convincing him that he had

9

misunderstood Chujoy because of his odd sense of humor and that Chujoy was conscious of his wrongdoing. A reasonable juror could find that Chujoy played a role in orchestrating the crucial dinner meeting with Edlind which was at least partially intended to reshape Kwiatkowski's testimony through persuasion. These factual inferences, taken together and viewed in the light most favorable to the government, suggest that Chujoy did knowingly attempt to corruptly persuade Kwiatkowski.

IV.

Because a reasonable juror could find the evidence sufficient to support Chujoy's conviction for witness tampering, the district court's judgment is

*AFFIRMED.*